307 Ga. 1
FINAL COPY

S19A0696.  BENTLEY v. THE STATE.

NAHMIAS, Presiding Justice.

Appellant Maurice Bentley was convicted of malice murder and other crimes in connection with a shooting that killed Michael Polite and injured Angela Johnson. Appellant contends on appeal that his trial counsel provided ineffective assistance by failing to object to an autopsy photograph, failing to stipulate to Appellant's prior convictions for rape and incest, and mentioning in front of the jury an earlier trial in this case. None of these claims has merit, so we affirm.[1]

---

[1] The crimes occurred on December 24, 2013. On March 26, 2014, a Chatham County grand jury indicted Appellant for malice murder, two counts of felony murder (based on aggravated assault and possession of a firearm by a convicted felon), aggravated assault of Polite, aggravated assault of Johnson, two counts of possession of a firearm during the commission of a felony, possession of a firearm by a convicted felon, and three counts of failure to register as a sex offender. Appellant was first tried in June 2015, but after the jury failed to reach a unanimous verdict, the trial court declared a mistrial. He was tried again in February 2016, but that trial also resulted in a mistrial because the jury failed to reach a verdict.

Appellant's third trial began on March 1, 2017. The trial court bifurcated

1. Viewed in the light most favorable to the verdicts, the evidence presented at Appellant's trial showed the following. On Christmas Eve 2013, Appellant spent the day with Crystal Frazier, whom he had known for about a week. That evening, Appellant dropped off Frazier at the house she shared with her four children and her mother Angela Johnson. Michael Polite, Frazier's ex-boyfriend and the father of her children, was at the house when Frazier arrived. Frazier planned to leave the house again to go to a Christmas party with Appellant, and she and Polite argued because

the failure-to-register counts, and on March 3, the jury found Appellant guilty of the remaining charges. On March 13, the trial court sentenced Appellant as a recidivist under OCGA § 17-10-7 (c) to serve life in prison without the possibility of parole for malice murder, 20 consecutive years for the aggravated assault of Johnson, a five-year consecutive term for each count of possession of a firearm during the commission of a felony, and a five-year concurrent term for possession of a firearm by a convicted felon. The felony murder counts were vacated by operation of law, the remaining aggravated assault count merged, and the failure-to-register counts were nolle prossed. On April 26, 2017, the trial court amended its sentencing order, nunc pro tunc to March 13, to sentence Appellant as a recidivist under OCGA § 17-10-7 (a) and to modify the calculation of his total sentence. Appellant did not file a timely motion for new trial. After he obtained new appellate counsel, however, the trial court granted his motion for out-of-time appeal, and Appellant then filed a motion for new trial, which he later amended. After an evidentiary hearing, the trial court denied the motion on December 7, 2018. Appellant filed a timely notice of appeal, and the case was docketed to the April 2019 term of this Court and submitted for decision on the briefs.

he wanted her to spend the evening with him and their children.

Later that evening, Appellant returned to the house to pick up Frazier for the party. He parked his SUV on the street in front of the house, sat in the passenger seat with the door open, and waited for her. Polite then went out to the front yard and told Appellant to leave because Frazier was going to stay with Polite and the children. Appellant and Polite argued, and Johnson, Frazier, and Frazier's sister Kimberly also went out to the front yard. Frazier stood near Appellant, who was still sitting in the passenger seat, while Polite, Johnson, and Kimberly stood in front of Appellant in the yard. Johnson tried to persuade Polite to return to the house by pulling on his arm. She then heard Polite say, "[O]h, you got a gun," and "[W]e ain't gotta do that." Polite stepped back toward the house and said that he and Appellant "could fight and get it over with." Appellant then stood up outside the SUV, pulled out a gun, and shot toward Polite as Polite began to run away. Polite was shot four times and collapsed near the side of the front yard; Johnson was shot once in the leg. Appellant, who was a convicted felon, then fled in his SUV.

3

Moments later, paramedics arrived, and Polite and Johnson were taken to a hospital, where Polite died later that night from his gunshot wounds. Investigators interviewed Johnson, Frazier, and Kimberly that night; each of the women was shown a photo lineup and identified Appellant as the shooter. Investigators found two .380 shell casings near the area where Polite had collapsed and one .380 shell casing in the street in front of the house.

Phone records showed that Appellant called his cousin moments after the shooting. The cousin testified that Appellant arrived at her house in his SUV later that night, parked it on the side of the house, and told her at some point that he was leaving to change his clothes, but did not return. Investigators found Appellant's SUV parked next to the cousin's house. Almost two weeks later, Appellant was found at another family member's house; he was arrested after he attempted to escape by climbing out a window.

At trial, Johnson, Frazier, and Kimberly each identified Appellant as the shooter and testified that no one else had a gun

that night. In addition, Frazier told investigators that Appellant carried a .380 pistol, and she testified that she had seen a gun in Appellant's glove compartment earlier on the day of the shooting. She also testified that shortly after the shooting, she called Appellant and told him that he had killed Polite, and Appellant responded that "he wasn't trying to kill him." During a call Appellant made from jail, which was recorded and later played for the jury, Johnson accused Appellant of shooting her and Polite and said that he needed to tell the truth; Appellant replied, "Yeah."

The medical examiner who performed Polite's autopsy testified that Polite was shot once in the back of his shoulder, once near his pelvis, and twice in his lower back. The medical examiner removed four .380 bullets from Polite's body and testified that the location of the bullet wounds was consistent with Polite's having run away from the shooter. A firearms examiner testified that the three shell casings found at the crime scene were fired from the same .380 pistol and that all of the bullets recovered from Polite's body were fired from the same .380 pistol, although he could not determine whether

5

the same pistol fired the shell casings and the bullets.

Appellant did not testify at trial. His primary defense theory was that Frazier was the shooter and he was merely present at the scene. To support this theory, Appellant pointed to evidence that Frazier and Polite had a violent relationship and that Frazier had purchased a Davis .380 pistol in 2009. Frazier testified, however, that at the time of the shooting she no longer owned that pistol, and the firearms examiner testified that the bullets from Polite's body were not consistent with having been fired from a Davis pistol. Moreover, the prosecutor asked Frazier if she had shot Polite and Johnson, and she squarely denied it.

Appellant does not challenge the legal sufficiency of the evidence supporting his convictions. Nevertheless, in accordance with this Court's practice in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes of which he was

convicted. See *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)).

2. Appellant contends that his trial counsel provided ineffective assistance in three ways. To succeed on his claims, Appellant must show that his counsel's performance was professionally deficient and that he suffered prejudice as a result. See *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). To establish deficient performance, Appellant must show that his lawyer performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. See id. at 687-690. To prove prejudice, Appellant must demonstrate that there is a reasonable probability that, but for counsel's deficiency, the result of his trial would have been different. See id. at 694. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'"

*Harrington v. Richter*, 562 U.S. 86, 104 (131 SCt 770, 178 LE2d 624) (2011) (quoting *Strickland*, 466 U.S. at 693). Rather, Appellant must establish a "reasonable probability" of a different result, which means "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Finally, we need not address both parts of the *Strickland* test if Appellant makes an insufficient showing on one. See id. at 697.

(a) Appellant asserts that his trial counsel provided ineffective assistance by failing to object to the admission of an autopsy photo. Because the objection to the photo that Appellant says his counsel should have made would have been meritless, this claim fails.

The photo, which was admitted into evidence during the State's direct examination of the medical examiner who performed Polite's autopsy, showed Polite's back with rods inserted into his four gunshot wounds to approximate the trajectories of the bullets that struck him. Appellant argues that his trial counsel should have objected to the photo on the ground that its admission was precluded by the evidence rule announced in *Brown v. State*, 250 Ga. 862 (302

SE2d 347) (1983). In *Brown*, this Court declared that "[a] photograph which depicts the victim after autopsy incisions are made or after the state of the body is changed by authorities or the pathologist will not be admissible unless necessary to show some material fact which becomes apparent only because of the autopsy." Id. at 867.

We recently held, however, that *Brown*'s judge-made, categorical exclusionary rule was abrogated by Georgia's new Evidence Code. See *Venturino v. State*, 306 Ga. 391, 395-396 (830 SE2d 110) (2019). See also *State v. Orr*, 305 Ga. 729, 739 n.8 (827 SE2d 892) (2019). Because the trial of this case occurred years after the new Code took effect, any objection to the autopsy photo based on *Brown* would have been meritless. See *Jackson v. State*, 306 Ga. 266, 273 (830 SE2d 99) (2019) (explaining that an appellant "cannot prevail on a claim of ineffectiveness on the basis that his trial counsel failed to rely on a case that was not applicable to his trial"). See also *Lockhart v. Fretwell*, 506 U.S. 364, 366 (113 SCt 838, 122 LE2d 180) (1993) (concluding that the defendant could not establish

*Strickland* prejudice where, in the time between trial counsel's alleged deficient performance and the ruling on the ineffective assistance claim, the law on which counsel's alleged error was predicated was overruled).

Moreover, even if Appellant's trial counsel had objected to the autopsy photo as unfairly prejudicial under the new Evidence Code, that objection would have failed. Under the new Code, the general admissibility of autopsy photographs is governed by OCGA §§ 24-4-401, 24-4-402, and 24-4-403. See *Venturino*, 306 Ga. at 395. OCGA § 24-4-401 says that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." According to OCGA § 24-4-402, "[a]ll relevant evidence shall be admissible, except as limited by constitutional requirements or as otherwise provided by law or by other rules . . . ." OCGA § 24-4-403 allows for the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." "[T]he exclusion of relevant

evidence under Rule 403 is an extraordinary remedy that should be used only sparingly." *Venturino*, 306 Ga. at 394-395 (citations and punctuation omitted).

At trial, the medical examiner testified that the autopsy photo showed the approximate paths of the bullets that struck Polite once in the back of his shoulder, once near his pelvis, and twice in his lower back. The medical examiner concluded that the trajectories were consistent with Polite's having run away from the shooter. The photo and the medical examiner's testimony about it were relevant to corroborate Frazier's, Johnson's, and Kimberly's accounts of Polite running away as Appellant repeatedly shot him from behind. See id. at 396 (explaining that the challenged autopsy photo was relevant to show the nature and location of the victim's injuries, which corroborated an eyewitness's account of the shooting). See also *Pike v. State*, 302 Ga. 795, 799-800 (809 SE2d 756) (2018); *Moss v. State*, 298 Ga. 613, 617-618 (783 SE2d 652) (2016). And as autopsy photos in a murder case go, this one was not especially gory or gruesome. See *Pike*, 302 Ga. at 799; *Moss*, 298 Ga. at 617.

The probative value of the photo was not substantially outweighed by the danger of unfair prejudice, and the trial court would have acted well within the bounds of its discretion by admitting it even if counsel had objected under OCGA § 24-4-403. See *Moss*, 298 Ga. at 618. Thus, "[a] competent attorney in the position of Appellant's trial lawyer[ ] would have had every reason to believe that an objection to this autopsy evidence based on OCGA § 24-4-403 would fail . . . ." *Moss*, 298 Ga. at 618. Trial counsel was not deficient in this respect. See id.

(b) As mentioned above in footnote 1, Appellant's indictment included a count for possession of a firearm by a convicted felon. See OCGA § 16-11-131 (b) (making it a felony for a person who has been convicted of a felony to possess any firearm). He was also charged with a count of felony murder based on the felon-in-possession-of-a-firearm offense. Shortly before the State rested its case, the prosecutor tendered State's Exhibit 40 for the purpose of proving the element of a prior felony conviction. The prosecutor described the exhibit to the jury simply as "a certified copy of indictment number

CR97-0187, a conviction for [Appellant] for rape and incest." The exhibit included Appellant's January 1997 indictment for rape and incest, which alleged that he repeatedly raped his under-12-year-old sister, and the judgment of conviction after he pled guilty to those crimes four months later.[2] The trial court admitted the exhibit without objection; the prosecutor did not publish it to the jury, although it was given to the jury with the other exhibits during deliberations.

Appellant now contends that his trial counsel provided ineffective assistance by failing to offer to stipulate to Appellant's status as a convicted felon, which resulted in the admission of evidence that he had committed rape and incest. He argues that his counsel performed deficiently because the trial court would have been required to accept such a stipulation under the United States Supreme Court's holding in *Old Chief v. United States*, 519 U.S. 172 (117 SCt 644, 136 LE2d 574) (1997), and this Court's adoption of

---

[2] The exhibit included several other documents related to the convictions, but Appellant does not argue that any prejudice resulted from them.

that holding in *Ross v. State*, 279 Ga. 365 (614 SE2d 31) (2005).

(1) The question presented in *Old Chief* was whether a trial court, in a case involving a federal charge of possession of a firearm by a convicted felon, abuses its discretion under Federal Rule of Evidence 403 by rejecting the defendant's offer to stipulate to the fact of his prior felony conviction and instead allowing the admission of the full record of the prior judgment of conviction. See 519 U.S. at 174. The Supreme Court held that when the name or nature of the prior offense raises the risk of a verdict tainted by improper considerations, and when the purpose of the evidence is solely to prove the element of prior conviction, a trial court abuses its discretion under Rule 403 by spurning the defendant's offer to stipulate and instead admitting the evidence of the earlier conviction. See *Old Chief*, 519 U.S. at 174, 191-192.

This Court later adopted *Old Chief*'s reasoning in *Ross*, in which we held:

> [W]hen (1) a defendant's prior conviction is of the nature likely to inflame the passions of the jury and raise the risk of a conviction based on improper considerations,

14

and (2) the purpose of the evidence is solely to prove the defendant's status as a convicted felon, then it is an abuse of discretion for the trial court to spurn the defendant's offer to stipulate to his prior conviction and admit the evidence to the jury.

279 Ga. at 368. We then concluded that the nature of Ross's prior conviction for enticing a child for indecent purposes "could raise the risk of a verdict tainted by improper considerations"; that the evidence was unnecessary to prove anything other than his status as a convicted felon; and that it was therefore an abuse of discretion for the trial court to reject his offer to stipulate to that fact. Id. We determined, however, that the error was harmless due to the overwhelming evidence of Ross's guilt. See id.

*Ross* was decided under Georgia's old Evidence Code, and so *Old Chief* — an interpretation of federal evidence law — was not controlling on this Court, as was emphasized by the special concurrence in *Ross,* which rejected the *Old Chief* holding. See *Ross*, 279 Ga. at 369 (Carley, J., concurring specially). Ironically, because *Ross* was decided under the old Evidence Code, *it* is no longer the controlling authority for this Court, because in OCGA § 24-4-403 the

new Evidence Code adopted Federal Rule of Evidence 403 "as interpreted by the Supreme Court of the United States," Ga. L. 2011, pp. 99, 100 § 1. See *Davis v. State*, 299 Ga. 180, 189 (787 SE2d 221) (2016) ("OCGA § 24-4-403 mirrors Federal Rule of Evidence 403 and is interpreted accordingly."). See generally *State v. Almanza*, 304 Ga. 553, 555-559 (820 SE2d 1) (2018).  Thus, the Supreme Court's interpretation of Rule 403 in *Old Chief* is now the most controlling decision on this issue.

This understanding may not change the result in any case, because the *Ross* majority followed *Old Chief* and our decisions applying *Ross* are likely also faithful applications of *Old Chief* (at least the ones we cite below are). But as we have emphasized time and time again, to apply the law correctly, it is essential to understand which Evidence Code applies to the case and what precedent therefore controls. See *Davis*, 299 Ga. at 192. See also *Almanza*, 304 Ga. at 558 (holding that, where a new Georgia evidence rule mirrors a federal evidence rule, "we look to federal appellate precedent until a Georgia appellate court decides the issue

16

under the new Code," even where the old Georgia rule also mirrored the federal rule).

(2) Assuming that Appellant's trial counsel performed deficiently by failing to offer to stipulate to his prior convictions under *Old Chief*, Appellant cannot prove that this alleged error likely affected the jury's guilty verdicts. To begin with, during the entire trial the prior offenses were identified only twice in passing. As noted above, when the prosecutor tendered State's Exhibit 40, he briefly described the exhibit as "a conviction for [Appellant] for rape and incest." And during closing argument, the prosecutor explained the law prohibiting convicted felons from possessing firearms and then noted "why [Appellant's] a convicted felon, rape and incest are felonies." The names and nature of the earlier convictions were not emphasized by the State; rather, the prior offenses were properly used only to establish the convicted-felon element of Appellant's charges for possession of a firearm by a convicted felon and felony murder based on that underlying crime.

To that end, the trial court gave an extensive instruction

17

strictly limiting the jury's consideration of the evidence to those two

counts, explaining that the jury was "not to consider [the] evidence

for any other purpose, whatsoever."[3] We ordinarily presume that

jurors follow such instructions. See *State v. Spratlin*, 305 Ga. 585,

595 (826 SE2d 36) (2019). Thus, the disputed evidence was only a

---

[3] Specifically, the trial court instructed:

Now, sometimes evidence is admitted for a limited purpose. Such evidence may be considered by you for the sole issue or purpose for which the evidence is limited and not for any other purpose. You have received in evidence, and will have copy with you, a copy of a prior conviction of [Appellant]. That is a required element of a conviction in count three, which charges felony murder and the underlying felony being, and I'm going to explain that to you in more detail, possession of a firearm by a convicted felon. It also applies to count eight which is the charge of possession of a firearm by a convicted felon. You may consider this evidence only insofar as it may relate to counts three and eight, and for no other purpose.

. . .

In count three [Appellant is] charged with commission of felony murder while in the commission of the offense of possession of a firearm by convicted felon. To prove the offense of possession of firearm by a convicted felon, the State must produce evidence, evidence to prove beyond a reasonable doubt that [Appellant] is in fact a convicted felon. Evidence has been admitted into evidence for that purpose. I instruct you that you are to consider any such evidence only for the very limited purposes of proving that [Appellant] has a prior felony conviction, if it does so . . . [. Y]ou are not to consider such evidence for any other purpose, whatsoever.

minor consideration at the trial.[4]

By contrast, the evidence of Appellant's guilt was compelling. Three eyewitnesses — Johnson, Frazier, and Kimberly — identified him as the shooter in photo lineups and at trial and testified that no one else had a gun that night. Frazier also told investigators that Appellant carried a .380 pistol — the type of gun used in the shooting — and she testified that she had seen a gun in Appellant's car earlier on the day of the shooting. When Frazier informed Appellant that Polite had died from his gunshot wounds, Appellant responded that "he wasn't trying to kill him." Appellant then evaded arrest for nearly two weeks and attempted to climb out a window when investigators finally found him. And during a recorded jail phone call, Appellant did not dispute Johnson's accusation that he was the

---

[4] Appellant analogizes his case to *Starling v. State*, 285 Ga. App. 474 (646 SE2d 695) (2007), in which the Court of Appeals concluded that trial counsel provided ineffective assistance by failing to offer to stipulate to the appellant's convicted-felon status in accordance with the holding in *Ross*. But *Starling* is readily distinguishable. In addition to failing to stipulate to the prior convictions, trial counsel and the prosecutor elicited testimony regarding the details of the earlier offenses, one of which was the same as an offense for which the appellant was being tried; the prosecutor then emphasized those details during his closing; and the trial court failed to instruct the jury as to how to consider that evidence. See id. at 476-479.

shooter.

Appellant argues that he was prejudiced by his lawyer's failure to stipulate to the rape and incest convictions because evidence of the nature of his convictions was not admitted during his two previous trials, which resulted in mistrials after the juries failed to reach unanimous verdicts.[5] He asserts that the admission of the prior offenses during his third trial — the one resulting in the convictions now under review — induced the jury to find him guilty. But no two trials are the same. Even multiple trials of the same case will have differences in evidence and arguments — some apparent

---

[5] Appellant cites no authority for the proposition that we should consider a jury's failure to reach a verdict in an earlier trial in the case as evidence supporting a finding of prejudice or harmful error in a later trial. Our own research indicates that we have done so in a few older cases, and in more recent cases we have not. Compare *Bass v. State*, 285 Ga. 89, 93 (674 SE2d 255) (2009), *Cobb v. State*, 283 Ga. 388, 391 (658 SE2d 750) (2008), and *Lattimore v. State*, 265 Ga. 102, 105 (454 SE2d 474) (1995), with *McCoy v. State*, 303 Ga. 141, 141 n.1, 143 (810 SE2d 487) (2018), and *Kidd v. State*, 292 Ga. 259, 259 n.1, 261-262 (736 SE2d 377) (2013). In none of these cases has the Court squarely addressed whether we *should* take prior trials into account in deciding prejudice or harm from an error in a later trial. We have said in a different context that "'the fact that a jury hangs is evidence of nothing — other than, of course, that it has failed to decide anything.'" *Giddens v. State*, 299 Ga. 109, 115 (786 SE2d 659) (2016) (quoting *Yeager v. United States*, 557 U.S. 110, 125 (129 SCt 2360, 174 LE2d 78) (2009)). As discussed below, however, we need not resolve that issue in this case.

20

on the record and some, like changes in witness tone and demeanor, that are not readily discernible from a transcript. And the evidence and arguments are considered by wholly unique juries. The juries for Appellant's two prior trials may have hung for any number of reasons, such as vociferous disagreement, confusion about the evidence or law, or exhaustion after the intensity of trial. See *Yeager v. United States*, 557 U.S. 110, 121-122 (129 SCt 2360, 174 LE2d 78) (2009) (noting, in the context of analyzing the preclusive effect under the Double Jeopardy Clause of an acquittal on some counts when the jury hung on others, the factors that may "work alone or in tandem to cause a jury to hang," and explaining that an attempt to ascribe meaning to a hung count "is not reasoned analysis; it is guesswork").

Each of Appellant's three trials was considered by different juries; the first was tried by different counsel for both the State and Appellant before a different judge, and there are undoubtedly other indiscernible differences among the trials. But even putting all of that aside, the record reveals differences in some key evidence

presented at each trial. During the first trial, the State seemed surprised by the defense theory that Frazier shot Polite and Johnson with a .380 pistol that she had owned, and the prosecutor offered little evidence to rebut that theory. At the second trial, the prosecutor countered the defense theory with more evidence: proof of the type of pistol Frazier owned (a Davis .380); her testimony that she no longer owned it at the time of the shooting; and a firearms examiner's testimony that the bullets recovered from Polite's body were consistent with having been fired by a Bryco-Jennings or Jimenez Arms pistol. However, the prosecutor did not ask the firearms examiner a crucial question — whether the bullets that killed Polite could have been fired from a Davis .380 pistol. At Appellant's third trial, the prosecutor asked that question, and the firearms examiner testified definitively that the deadly bullets were not consistent with having been fired by a Davis pistol. Moreover, only during this trial did the prosecutor ask Frazier directly if she had shot Polite and Johnson; she squarely denied it.

Thus, even assuming that a jury's failure to reach a unanimous

verdict at an earlier trial can help to support a conclusion that the evidence at a later, different trial in the case was less than overwhelming, the prior mistrials in this case do not do so. Compare *Bass v. State*, 285 Ga. 89, 93 (674 SE2d 255) (2009) (considering the fact that a prior jury hung in the appellant's case in holding that he established *Strickland* prejudice, noting that the State's evidence was not significantly stronger than in his first trial). Accordingly, we conclude that the admission of the exhibit referencing Appellant's rape and incest convictions had no probable effect on the outcome of the trial, and he therefore cannot prevail on this claim of ineffective assistance. See, e.g., *Carter v. United States*, 133 Fed. Appx. 321, 324-325 (7th Cir. 2005) (holding that any deficiency in trial counsel's failure to stipulate to the appellant's prior convictions for recklessly endangering safety and possession with intent to distribute cocaine did not prejudice him, because the evidence of his guilt was substantial); *Henderson v. State*, 285 Ga. 240, 243 (675 SE2d 28) (2009) (concluding that the appellant failed to show that he was prejudiced by his trial counsel's failure to stipulate or request

23

a limiting instruction regarding the appellant's prior conviction for assault with a dangerous weapon). See also *Ross*, 279 Ga. at 368 (concluding that the trial court erred by rejecting the appellant's offer to stipulate to his convicted-felon status, but that the admission of the evidence of his prior conviction for enticing a child for indecent purposes was harmless in light of the overwhelming evidence of his guilt); *Whitt v. State*, 281 Ga. App. 3, 3-4 (635 SE2d 270) (2006) (holding that the trial court abused its discretion by refusing to allow the appellant to stipulate to his prior conviction for aggravated child molestation, but concluding that the error was harmless due to the overwhelming evidence of his guilt).

(c) Finally, Appellant argues that his trial counsel provided ineffective assistance by mentioning in front of the jury Appellant's second trial (which, as discussed above, resulted in a mistrial). As counsel began to show a witness the transcript of her testimony from the prior trial to impeach her with it, the prosecutor asked counsel to identify the date on it, and counsel remarked, "This is the transcript from the trial, from the last hearing February."

24

Pretermitting whether trial counsel performed deficiently by mentioning the earlier trial, Appellant cannot show that this fleeting reference to it prejudiced him. Counsel immediately re-characterized the transcript as coming from a prior "hearing," and the jury likely understood the initial reference to "the trial" as mistaken; indeed, trial counsel and the prosecutor had already referred several times during this trial to witnesses' testimony from earlier "hearings." There was no other mention of Appellant's previous trials, and given the strong evidence of his guilt discussed in Division 2 (b), he cannot show that any deficiency with respect to this claim likely affected the outcome of the proceeding.

(d) Although we have evaluated each of Appellant's claims of ineffective assistance of counsel separately, "we also recognize that 'the effect of prejudice resulting from counsel's deficient performance is viewed cumulatively.'" *Jackson v. State*, 306 Ga. 69, 90 (829 SE2d 142) (2019) (citation omitted). Having considered the cumulative effect of the deficiencies assumed in Division 2 (b) and (c), we conclude that they do not establish a reasonable probability that the

result of Appellant's trial would have been different in the absence of the deficiencies alleged. See id.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 7, 2019.

Murder. Chatham Superior Court. Before Judge Abbot.

*Steven L. Sparger*, for appellant.

*Meg E. Heap, District Attorney, Jennifer L. Parker, Christine S. Barker, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General*, for appellee.