**NOTICE:** This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: September 16, 2025

S25A0856. FRASER v. THE STATE.

LAND, Justice.

Appellant Marcus Fraser challenges his convictions for malice murder and other crimes in connection with the shooting death of Rodricous Gates, Jr. Fraser contends that his trial counsel rendered ineffective assistance by failing to stipulate that Fraser was a convicted felon and by "opening the door" to testimony about Fraser's juvenile criminal history. We affirm in part and vacate in part.[1]

---

[1] Gates was killed on August 6, 2017. On January 31, 2018, a Clayton County grand jury indicted Fraser for malice murder, two counts of felony murder, two counts of aggravated assault for shooting Gates in the neck and in the abdomen, and possession of a firearm by a convicted felon based on a felony conviction for first degree attempted criminal sexual act in the Westchester County Court in New York. At a trial from February 4 to 7, 2019, the jury found Fraser guilty of all charges. The trial court sentenced Fraser to serve life in prison without the possibility of parole for malice murder, a consecutive term of 20 years in prison for shooting Gates in the abdomen, and

1. The evidence presented at trial showed the following. Fraser sold marijuana to Gates on several occasions. On August 6, 2017, Gates arranged to meet with Fraser to borrow marijuana from him, promising to pay Fraser back later for the drugs. They agreed to meet at the apartment complex where Fraser had been living with his girlfriend, Shantavier Willis. Prior to Gates arriving, Fraser was in Willis's apartment with her and two of her friends. To one of Willis's friends, Fraser appeared "[a] little edgy[,] … [j]ust walking around the apartment[,]" and the friend noticed what he thought was the handle of a black "semi-auto Smith [& Wesson]" handgun in

---

a consecutive term of five years for possession of a firearm by a convicted felon. The felony murder counts were vacated by operation of law and the aggravated assault count for shooting Gates in the neck merged with the malice murder count. On March 4, 2019, with the assistance of new counsel, Fraser filed a motion for new trial, which he amended on December 27, 2019. The trial court held an evidentiary hearing on December 12, 2022, and entered a one-sentence order granting Fraser's motion for new trial on May 1, 2023. On May 11, 2023, the State filed a motion to reconsider. On June 1, 2023, the trial court entered an order vacating its May 1 order and denying Fraser's motion for new trial. On June 11, 2023, Fraser filed a notice of appeal directed to the Court of Appeals. Fraser later filed a motion to transfer the case to this Court, which the Court of Appeals granted on February 27, 2025. See *State v. Thornton*, 253 Ga. 524, 524 (1984). The case was docketed to this Court's April 2025 term and submitted for a decision on the briefs.

Fraser's back pocket. Gates called Fraser when he arrived, and Fraser told Gates to meet him at one of the buildings in the complex.

Moments after Fraser left Willis's apartment, Willis's friends heard gunshots from outside, and a neighbor saw Fraser running with a "black handle in his hand," which she "assumed ... was a gun." Shortly after the gunshots, Fraser ran back into Willis's apartment and said "I shot somebody, we have to go." Fraser, Willis, and Willis's friends left the apartment shortly after, and Fraser and Willis called a rideshare service and went to Fraser's mother's house. Fraser did not call 911.

After receiving a "person-shot call," police were dispatched to the complex, where they found Gates lying dead next to his car. At the scene, the police recovered eight .45-caliber shell casings that appeared to be freshly fired and a 9mm pistol containing six live rounds near a trail of blood drops.

At trial, the medical examiner who conducted the autopsy on Gates's body testified that Gates suffered two gunshot wounds—one to the right side of his neck and one to the front left side of the

3

abdomen, the latter of which "didn't play much of a role in the death[.]"The medical examiner also recovered two bullets from Gates's body.

A GBI firearms examiner testified that the eight .45-caliber shell casings recovered from the scene were all fired from the same gun, that the two .45-caliber bullets recovered during Gates's autopsy were fired from the same gun, and that both the shell casings and bullets had characteristics that were consistent with having been fired from a Smith & Wesson .45-caliber semi-automatic pistol.

Fraser, who was a convicted felon, elected to testify in his own defense at trial. He admitted that he shot Gates but claimed that he did so in self-defense. Fraser testified that he was unarmed when he went to meet Gates and that Gates and another man, who were both armed, attempted to rob Fraser at gunpoint. Fraser claimed that he wrested the gun away from the other man and started to run away with the gun. Fraser stated that Gates began to chase him with a gun in his hand. Fraser then fired shots in the direction of Gates

4

until Gates stopped pursuing him.

2. Fraser argues that he was denied the effective assistance of counsel. To establish a claim of ineffective assistance of counsel, a defendant must prove both deficient performance by his counsel and resulting prejudice. See *Strickland v. Washington*, 466 US 668, 687 (1984).

To prove deficient performance, a defendant must show that his attorney performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. See *Strickland*, 466 US at 687–88. The law recognizes a "strong presumption" that counsel performed reasonably, which the defendant bears the burden of overcoming. Id. at 689.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to

> reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time ... There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

Id. (citations omitted). Accord *Wells v. State*, 295 Ga. 161, 163–64 (2014). See also *Harrington v. Richter*, 562 US 86, 105 (2011) ("[T]he standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.").

To overcome the strong presumption of competence, a defendant must show that no reasonable attorney would have done what his attorney did or would have failed to do what his attorney did not do. See *Wells*, 295 Ga. at 164. In particular, "decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course." Id.

6

(citation omitted).

Even when a defendant has proved that his counsel's performance was deficient in this constitutional sense, the defendant also must prove resulting prejudice to prevail on a claim of ineffective assistance of counsel. To do so, the defendant must establish that but for his counsel's unprofessional errors, there is a "reasonable probability" that the outcome of the proceeding would have been different. *Strickland*, 466 US at 694. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington*, 562 US at 104 (quoting *Strickland*). Rather, the defendant must demonstrate a "reasonable probability" of a different result, which is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694. "If either *Strickland* prong is not met, this Court need not examine the other prong." *Palmer v. State*, 303 Ga. 810, 816 (2018).

In all, the burden of proving a claim of ineffective assistance of counsel is a heavy one. See *Harrington*, 562 US at 105. We conclude that Fraser's trial counsel did not render ineffective assistance for

7

the reasons stated below.

(a) Fraser first argues that trial counsel was ineffective for failing to stipulate to his felon status. Relying on *Ross v. State*, 279 Ga. 365 (2005), Fraser argues that, had trial counsel offered to stipulate to Fraser's status as a convicted felon, the offer would have had to be accepted by the trial court. See 279 Ga. at 368 (holding that when a defendant's prior conviction is offered solely for the purpose of proving the defendant's status as a convicted felon and "is of the nature likely to inflame the passions of the jury and raise the risk of a conviction based on improper considerations, ... then it is an abuse of discretion for the trial court to spurn the defendant's offer to stipulate to his prior conviction and admit the evidence to the jury"). As discussed below, the problem with Fraser's argument is that, regardless of whether trial counsel stipulated to Fraser's status as a convicted felon, once Fraser decided to testify in his own defense, the relevance of his prior conviction was not limited merely to proving his status as a convicted felon on the firearm charge but included the impeachment of his testimony pursuant to OCGA § 24-

8

6-609.

During the State's case-in-chief at trial, it presented State's Exhibit 79, a "felony certified conviction ... for the offense of attempted criminal sexual act in the first degree," as evidence of Fraser's convicted-felon status. Fraser's trial counsel stated that he had no objection to the exhibit "[s]ubject to how it's published." The State indicated that it did not intend to publish Exhibit 79 to the jury, and the trial court admitted the exhibit.

After the State rested, however, Fraser indicated that he was going to testify. The State then moved to admit Exhibit 79 for impeachment purposes under OCGA § 24-6-609.[2] Exhibit 79 showed a date of conviction of June 10, 2008, and the State represented that Fraser was released from confinement on April 6, 2016, which Fraser did not contest. Fraser's trial counsel objected on the grounds

---

[2] OCGA § 24-6-609(a)(1) provides, in relevant part, that "[f]or the purpose of attacking the character for truthfulness of a witness ... evidence that an accused has been convicted" of a crime punishable by death or imprisonment in excess of one year "shall be admitted if the court determines that the probative value of admitting the evidence outweighs its prejudicial effect to the accused."

that the conviction occurred when Fraser was a juvenile and thus the evidence would be more prejudicial than probative. The trial court overruled Fraser's objection, finding that Fraser was 17 years old at the time of conviction and therefore not a juvenile; that the conviction was not substantially similar to the case at trial and did not present "danger of any prejudice;" that the conviction fell within the parameters set forth in OCGA § 24-6-609(b)[3] because fewer than 10 years had elapsed since Fraser's release from confinement for the conviction; and that the conviction had probative value as to Fraser's credibility. The trial court therefore "allow[ed] the State to conduct an impeachment as it relates to State's [Exhibit] 79."

On direct examination, Fraser's trial counsel asked him about the circumstances leading to his 2008 conviction. Fraser explained that while he was in a juvenile group home in New York serving a

---

[3] OCGA § 24-6-609(b) provides, in relevant part, that "[e]vidence of a conviction under this Code section shall not be admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for such conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect."

sentence for other charges, he received an additional 10 years in prison because, while "beat[ing] up" a female counselor, he told the counselor to "suck my d\*\*k." On cross-examination, the State asked Fraser whether it was his "testimony that [he] got 10 years in prison because [he] told somebody suck [his] d\*\*k?" Fraser replied, "yes, sir." The State then asked whether Fraser had in fact pleaded guilty to an "attempt to engage in oral sexual conduct with another person by forcible compulsion." Fraser replied that he had. The State also asked Fraser whether he "decided as a convicted person of criminal attempt to commit sexual act in the first degree to come from New York down to Clayton County," to which Fraser replied, "yes." State's Exhibit 79 was sent out with the jury during deliberations.

At the hearing on Fraser's motion for new trial, trial counsel testified that, notwithstanding any stipulation regarding Fraser's felon status, he believed that the State would have been able to admit Fraser's 2008 conviction for first-degree attempted criminal sexual act to impeach him if Fraser testified. Counsel also stated that Fraser told him that he wanted to testify, that he and Fraser

11

"had extensive discussions about the consequences of [Fraser] testifying," and that he was "comfortable" that Fraser understood the risk of testifying.

We discern no deficiency in trial counsel's failure to stipulate to Fraser's felon status. As an initial matter, Fraser's reliance on *Ross* is misplaced. In *Old Chief v. United States*, 519 US 172, 186–87 (1997), the United States Supreme Court reaffirmed the general rule that the State "is entitled to prove its case by evidence of its own choice, or, more exactly, that a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." However, the *Old Chief* Court recognized an exception to that general rule, holding that "when the name or nature of the prior offense raises the risk of a verdict tainted by improper considerations, and when the purpose of the evidence is solely to prove the element of prior conviction, a trial court abuses its discretion under [Federal Rule of Evidence] 403 by spurning the defendant's offer to stipulate and instead admitting the evidence of the earlier conviction." *Bentley v. State*, 307 Ga. 1, 6–7

(2019) (citing *Old Chief*, 519 US at 174). Accordingly, in cases where the defendant stipulates to his status as a felon for purposes of a felon-in-possession charge, the government may not refer to the specific name or nature of the defendant's prior convictions in its case-in-chief. See *Old Chief*, 519 US at 186–87.

In *Ross*, the Georgia Supreme Court adopted the rule outlined in *Old Chief*. See 279 Ga. at 365. However, "*Ross* was decided under Georgia's old Evidence Code, and so *Old Chief* – an interpretation of federal evidence law – was not controlling on this Court." *Bentley*, 307 Ga. at 7. Thus, "because *Ross* was decided under the old Evidence Code, it is no longer the controlling authority for this Court." Id. (emphasis omitted). Instead, we have explained that Georgia's current "Evidence Code adopted Federal Rule of Evidence 403 as interpreted by the Supreme Court of the United States," and thus *Old Chief*, the case relied on in *Ross*, "is now the most controlling decision on this issue."[4] Id. (cleaned up).

---

[4] Because OCGA § 24-4-403 was borrowed from the Federal Rules of Evidence, we "look to decisions of the federal appellate courts construing and

However, as relevant here, OCGA § 24-6-609(a)(1) provides that a defendant's prior felony convictions "shall be admitted if the court determines that the probative value of admitting the evidence outweighs its prejudicial effect to the accused."[5] OCGA § 24-6-609(a)(1) is identical in all relevant respects to the corresponding federal rule and in such circumstances, we look for guidance to federal case law, especially case law from the United States Supreme Court and federal appellate courts, including particularly the Eleventh Circuit Court of Appeals. See *State v. Almanza*, 304 Ga. 553, 556–58 (2018) (when Georgia courts consider the meaning of the current Evidence Code, they should be guided by federal case law, particularly the decisions of the Eleventh Circuit, prior to its adoption, until a Georgia appellate court decides the issue under the new Code).

---

applying the Federal Rules, especially the decisions of the United States Supreme Court and the Eleventh Circuit." *Olds v. State*, 299 Ga. 65, 69 (2016).

[5] This is not the same balancing standard as OCGA § 24-4-403. See 28 Charles Alan Wright & Victor James Gold, *Federal Practice & Procedure* § 6134 at 230 (1993) ("[Federal] Rule 609(a)(1) is intended to make it harder to admit conviction evidence when offered against an accused than it is when offered against another witness.").

14

While this Court has yet to address whether *Old Chief* applies when the State seeks to admit evidence of a defendant's prior convictions under OCGA § 24-6-609(a)(1), we have found on this point persuasive federal authority, including from the Eleventh Circuit, explaining that *Old Chief* does not apply to evidence used to impeach a defendant's credibility as a witness. See *Anderson v. United States*, No. 23-12770, 2024 WL 778514, at *1 (11th Cir. 2024) (rejecting argument that trial counsel was ineffective for failing to obtain a stipulation regarding the defendant's prior cocaine trafficking conviction because "the district court correctly determined that *Old Chief* was inapplicable, as the government introduced the evidence of Anderson's prior cocaine trafficking conviction for impeachment purposes, not to establish a legal-status element of a charged offense"); *United States v. Smith,* 131 F3d 685, 687 (7th Cir. 1997) (holding that the trial court did not abuse its discretion in admitting the titles of the defendant's prior convictions under Federal Rule of Evidence 609(a)(1) and explaining that *Old Chief* did not apply because in that case "the prior conviction was

15

not used for impeachment purposes"); *United States v. Ledford*, 127 F3d 1103, \*3–4 (6th Cir. 1997) (holding that the trial court did not abuse its discretion in admitting evidence of the defendant's prior convictions under Federal Rule of Evidence 609(a) and explaining that in *Old Chief*, "the prior conviction was not used for impeachment purposes … nor did the defendant attempt to minimize his guilt."); *United States v. Tracy*, 36 F3d 187, 191–92 (1st Cir. 1994) (even where defendant stipulates to a prior conviction, the State may introduce prior convictions for impeachment purposes under Federal Rule of Evidence 609 where the defendant testifies in his own defense). See also *Robinson v. State*, 336 Ga. App. 627, 633 (2016) (holding that trial court did not abuse its discretion in admitting evidence of defendant's prior convictions for impeachment purposes under OCGA § 24-6-609(a)(1) even where defendant acknowledged his prior convictions on the stand).

Here, because Fraser chose to testify, his prior conviction was relevant and admissible for impeachment purposes pursuant to OCGA § 24-6-609(a)(1). Thus, under these circumstances, even if

counsel had offered to stipulate to the admission of the conviction during the State's case-in-chief, the State would have been able to use the 2008 conviction later when Fraser elected to testify. See *Sinkfield v. State*, 318 Ga. 531, 544 (2024) ("Under Federal Rule of Evidence 609(a), while the fact of the conviction, the nature of the conviction, and the punishment are all properly admitted, the specific facts and circumstances of the prior convictions generally are not admissible."). Moreover, once Fraser attempted to explain away his 2008 conviction on direct examination, the State was permitted to impeach him on the details of that prior conviction. See *United States v. Smith*, 454 F3d 707, 716–17 (7th Cir. 2006) (trial court did not err in allowing the government to impeach defendant with his prior conviction for possession with intent to deliver controlled substances, noting that "[w]here a defendant attempts to explain away the prior conviction by giving his or her own version of events, the door has been opened to impeachment by the prosecution on the details of the prior conviction").

Thus, trial counsel's decision not to stipulate to Fraser's felon

status was not deficient and Fraser's ineffective assistance of counsel argument fails. Cf. *Parker v. State*, 281 Ga. 490, 493 (2007) (trial counsel not deficient for failing to file a motion to suppress a statement that would have been admissible for impeachment purposes). See also *Anderson*, 2024 WL 778514 at *1 (trial counsel was not ineffective for failing to obtain a stipulation regarding the defendant's prior cocaine trafficking conviction).

(b) Fraser also argues that he was denied effective assistance of counsel because his trial counsel "opened the door" to testimony regarding Fraser's juvenile criminal history. For the reasons explained below, this claim fails.

During Fraser's direct examination, trial counsel asked Fraser why he was in a juvenile group home in New York at the age of 15. Fraser explained that in 2006, he received a juvenile "conviction" and was sent to the group home. Fraser also testified that while he was in the group home, he was "going through a real stressful time because [his] father ... passed away," and the group home denied him the opportunity to go to his father's funeral or to see his father's

18

headstone. Counsel also asked Fraser what he did after being released from the group home, and Fraser responded, among other things, that he had enrolled in drug and anger management programs, but that he "couldn't stop smoking weed" and violated his parole as a result. Fraser testified that rather than turning himself in, he fled to Georgia in May 2017.

On cross-examination, the State sought to introduce evidence of Fraser's juvenile criminal history because trial counsel had "opened the door" on direct examination. The trial court agreed and allowed the State to admit State's Exhibits 88 and 89. State's Exhibit 88 was a certified copy of an order entered by the Family Court of the State of New York in Brooklyn on June 29, 2006. The order found beyond a reasonable doubt, based on "proof and testimony," that Fraser, "while under 16 years of age," did the following acts "which if done by an adult would constitute the crime(s) of" attempted robbery by force with the use of an instrument, second degree menacing with a weapon, and criminal possession of weapon with intent to use. State's Exhibit 89 was a

19

certified copy of an order entered by the same court on August 7, 2006, in which that court found that Fraser had admitted in open court that he had committed an act that would constitute third-degree robbery if he were an adult. On cross-examination, the State asked Fraser whether he had "caught some charges" for the 2006 crimes. Fraser answered in the affirmative. The State also asked Fraser whether he had violated his parole, whether he knew he was "wanted" in New York for violating his parole, and whether he sold marijuana to young people in Clayton County after he fled New York. Fraser answered in the affirmative, although he denied that he sold marijuana to young people.

At the motion for new trial hearing, trial counsel testified that because Fraser testified in his own defense, he had discussions with Fraser about "how [we] wanted to approach that." Trial counsel testified it was a part of his strategy to elicit testimony about Fraser's "juvenile life" to demonstrate his state of mind at the time of the shooting. Through that line of questioning, trial counsel attempted to place Fraser in a more sympathetic light, showing that

20

Fraser was in a juvenile group home at 15, had been dealing with the death of his father, was participating in rehabilitation programs, and was addicted to drugs. Although that strategy may in hindsight be easily criticized and indeed "may have backfired," that "is not to say that it was ineffective." See *Redding v. State*, 311 Ga. 757, 764–65 (2021) (concluding that counsel's decision to elicit incriminating evidence did not require a finding of deficiency, because it was a strategic decision to place the defendant in a more sympathetic light). Because trial counsel made an objectively reasonable strategic decision to ask Fraser about his troubles as a juvenile for the purpose of casting him in a more sympathetic light, even though it was also possible that doing so could result in Fraser talking about criminal conducted he engaged in as a juvenile, we cannot say that no competent attorney would have made the same decision under these circumstances. See id. Accordingly, we conclude that trial counsel's performance was not deficient.

3. Although not raised by Fraser, we have identified a sentencing error with respect to Count 5, which charged him with

21

aggravated assault based on shooting Gates in the abdomen. See *Dixon v. State*, 302 Ga. 691, 696–98 (2017) (this Court has the authority to sua sponte correct merger errors and that authority is most commonly exercised with errors that harm a defendant). The trial court should have merged Count 5 into Fraser's malice murder conviction on Count 1 because there was no evidence of a deliberate interval separating the non-fatal shot to Gates's abdomen and the fatal shot to his neck. See *Reddings v. State*, 292 Ga. 364, 366 (2013) ("[W]here a victim suffers a series of injuries inflicted by a single assailant in rapid succession, each injury does not constitute a separate assault."). See also *Donaldson v. State*, 302 Ga. 671, 674 (2017) (addressing merger issues not raised by defendant and holding that "[t]he evidence (viewed in the light most favorable to the verdict) showed that the two shots were fired back to back as part of a single incident, and so the two aggravated assault counts both should have merged into felony murder for sentencing purposes") (cleaned up); *Jeffrey v. State*, 296 Ga. 713, 718 (2015) ("Because there was no evidence that the shooting occurred in a

22

manner other than in a single transaction, with no 'deliberate interval' separating any of the shots, only a single verdict for aggravated assault can stand, and the remainder must be merged into that verdict.") (cleaned up). We therefore vacate Fraser's conviction and sentence on Count 5. Because Fraser's sentence was otherwise proper, we need not remand this case to the trial court for resentencing. See *Atkinson v. State,* 301 Ga. 518, 521 (2017).

*Judgment affirmed in part and vacated in part. All the Justices concur.*