S07A1391. SUMLIN v. THE STATE.
(658 SE2d 596)

HUNSTEIN, Presiding Justice.

Appellant Leroy Sumlin appeals from his conviction of felony murder, aggravated assault, and related offenses in connection with the July 7, 2004 shooting death of Antonio Taylor.[1] Finding no error, we affirm.

1. Viewed in the light most favorable to the verdict, the evidence established that on the evening and into the morning of July 6-7, 2004, appellant was at his family's home at 229 Vine Street in Northwest Atlanta, drinking and carousing with his brother, Lawrence Sumlin, and friends Tamiko Jones and Eddie Dawson. As the evening

---

[1] Appellant was indicted by a Fulton County grand jury on November 9, 2004 for malice murder, felony murder, aggravated assault with a deadly weapon, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. At a trial commencing on August 23, 2005, a jury found appellant guilty of felony murder, aggravated assault, and both possession of a firearm charges. Following the trial court's subsequent grant of a mistrial and this Court's reversal of that decision in *State v. Sumlin*, 281 Ga. 183 (637 SE2d 36) (2006), discussed more fully in Division 2, infra, appellant was sentenced to life imprisonment on the felony murder count, plus five years consecutive for possession of a firearm during the commission of a crime, and an additional five years probated for possession of a firearm by a convicted felon. On February 2, 2007, the trial court denied appellant's motion for new trial, and appellant thereafter filed a timely notice of appeal. The appeal was docketed in this Court on May 24, 2007 and orally argued on September 24, 2007.

progressed, appellant and his brother began arguing and hitting each other, and appellant threatened Lawrence with a gun, prompting him to call 911.[2] At some point, Antonio Taylor joined the Sumlin brothers and Dawson, and Jones went inside to go to sleep. Taylor and appellant began arguing over money that appellant claimed Taylor owed him for "screwing up" a bag of appellant's cocaine. Dawson left to buy cigarettes, returned to find appellant and Taylor on the porch still arguing, and urged Taylor to leave to allow tempers to cool. As Taylor was walking up the street away from the house, he was shot in the chest. Taylor died from his wound.

Immediately after the shooting, appellant went into the bedroom where Jones had been sleeping and poured bleach on his hands, and then summoned Jones to jump out the window with him. Appellant gave the gun to Dawson, who in turn gave the gun to a neighbor, Quinton Benton.

After the shooting, appellant told Dawson that "he didn't really mean to shoot that man." Jessica Black, a 14-year-old neighbor, testified that the shooter and victim were arguing over drugs and money immediately before the shot was fired. Though Black described the shooter as a dark-skinned man, whereas the evidence established that appellant is a light-skinned man, Black also acknowledged that it was dark outside at the time the shooting occurred, and she could not positively identify anyone as the shooter.

Expert testimony established that a Berretta .380 found in the bushes at the apartment building where Benton lived was the murder weapon. The gun matched the description of a weapon in appellant's possession in the days before the shooting and which Dawson testified appellant had on the night of the shooting. Robert Clemensen, an expert on gunshot residue, testified that bleach, among other things, may be used to wash gunpowder residue from one's skin.

Contrary to appellant's argument, the evidence against him was not entirely circumstantial, because there was direct evidence of his guilt in the form of his admission to Dawson that he "didn't really mean to shoot [Taylor]." See *Wallace v. State*, 279 Ga. 26 (1) (608 SE2d 634) (2005). The evidence was sufficient to enable the jury to conclude beyond a reasonable doubt that appellant was guilty of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Testimony was adduced that appellant rinsed his hands with bleach immediately after the shooting and that bleach may be used to remove gunshot residue, raising the implication that appellant had

---

[2] A police officer was dispatched; he testified that when he arrived at the home, no one appeared to be there.

attempted to destroy physical evidence of his guilt. In an effort to discredit this theory, the defense on cross-examination elicited testimony from Jones, the only witness to the bleach incident, that appellant did not appear to be in pain or discomfort after pouring bleach on his hands, and from a police investigator that he reported noticing nothing unusual about appellant's hands on the night of the murder. The State's final witness was the medical examiner, who testified that bleach may, but does not always, sting when making direct contact with the skin because its effect depends on its concentration, the length of its contact with the skin, the skin's sensitivity, and other factors.

During closing argument, the prosecutor improperly injected new evidence when, after first conducting a demonstration in which she poured bleach on her hands, she stated near the conclusion of her argument that her hands "ain't yet stinging from the bleach."[3] The trial court sustained appellant's objection to this comment and, after appellant moved for mistrial, reserved its ruling on the motion and gave the jury a curative instruction. After the verdict was returned, appellant renewed his motion for mistrial. The trial court's erroneous granting of that motion was reversed in *State v. Sumlin*, 281 Ga. 183 (637 SE2d 36) (2006). Appellant now argues that the denial of his mistrial motion was error and that the curative instruction was insufficient to correct the error. However, appellant did not renew his motion immediately after the trial court gave the curative instruction. Instead, he delayed doing so until after the jury returned its verdict. This issue was thus not preserved for appellate review. *Pearson v. State*, 277 Ga. 813 (4) (596 SE2d 582) (2004) (party cannot during trial ignore what he thinks to be an injustice, take his chance on a favorable verdict, and complain later).

To the extent this argument is based on the trial court's denial of appellant's motion for new trial, which was made after sentencing on the grounds that the prosecutor's statement was reversible error, we need not determine whether the trial court was correct that its curative instruction was sufficient to remedy the effect of the improper statement.[4] Instead, we conclude that the prosecutor's statement, though a clear violation of appellant's Sixth Amendment right

---

[3] Appellant does not argue that the demonstration by itself was improper and in fact affirmatively acknowledges that, without the prosecutor's statement, the demonstration alone would not have been error because of the considerable latitude afforded to attorneys during closing argument. See, e.g., *Crowe v. State*, 265 Ga. 582, 592 (18) (c) (458 SE2d 799) (1995) ("considerable latitude is allotted to prosecutors in making closing argument").

[4] We are skeptical that the instruction, given well after the offending statement was made and two hours into the jury's deliberations, was capable of any broad remedial effect. Compare *Dukes v. State*, 273 Ga. 890 (3) (b) (548 SE2d 328) (2001) (curative instructions sufficient where promptly given at conclusion of offending testimony); *Stanley v. State*, 250 Ga. 3 (2) (295 SE2d

of confrontation, was harmless beyond a reasonable doubt given the collateral nature of the improper "bleach" evidence and the significant evidence of appellant's guilt. See *State v. Vogleson*, 275 Ga. 637 (3) (571 SE2d 752) (2002) (Sixth Amendment violations subject to harmless error analysis); *Yancey v. State*, 275 Ga. 550, 558 (3) (570 SE2d 269) (2002) (harmless error found only where there is no reasonable possibility that improper evidence contributed to conviction). As noted above, there was direct evidence in the form of appellant's own admission to Dawson that he was the shooter, as well as substantial corroborative evidence that appellant was behaving belligerently and was angry with the victim for damaging his drugs; that he had possession of the murder weapon in the days prior to and on the evening of the shooting; and that he had rinsed his hands with bleach immediately after the shooting. The improper bleach statement did not address the ultimate issue for the jury and merely sought to rebut the defense theory that appellant could not have poured bleach on his hands to remove gun residue without the bleach stinging or injuring him.[5] Moreover, the improper evidence presented by the prosecutor was arguably cumulative of the medical examiner's testimony to the effect that bleach would not always burn the skin. Accordingly, we find no reasonable possibility that the prosecutor's improper statement, viewed against the backdrop of all the evidence presented in the case, contributed to appellant's conviction. See, e.g., *Daniels v. State*, 280 Ga. 349 (2) (628 SE2d 110) (2006).

3. Appellant also contends that the trial court erred by failing to instruct the jury on the law of circumstantial evidence as set forth in OCGA § 24-4-6. However, where, as here, see Division 1, supra, the State presents both direct and circumstantial evidence, a trial court is required to give the instruction on circumstantial evidence only if the defendant so requests. *Yarn v. State*, 265 Ga. 787 (1) (462 SE2d 359) (1995). In this case, it is undisputed that appellant failed to request a charge on circumstantial evidence. Accordingly, there is no merit to this enumeration.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 10, 2008.

*Carl P. Greenberg*, for appellant.

---

315) (1982) (curative instructions sufficient where given "immediately" following improper testimony). Compare also *Spickler v. State*, 276 Ga. 164 (6) (575 SE2d 482) (2003) (mistrial not warranted where trial court "promptly halted" prosecutor's improper demonstration).

[5] The defense also sought to impeach Jones' bleach testimony by highlighting her failure to mention the matter in her August 2004 statement to police and by pointing out the many inconsistencies in her testimony.

*Paul L. Howard, Jr.,* District Attorney, *Marc A. Mallon, Bettieanne C. Hart,* Assistant District Attorneys, *Thurbert E. Baker,* Attorney General, *Amy E. Hawkins Morelli,* Assistant Attorney General, for appellee.