**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 10, 2014**

# In the Court of Appeals of Georgia

A14A0595. MOWOE v. THE STATE.

MCMILLIAN, Judge.

Mackie Omatshola Mowoe appeals following the trial court's denial of his motion for new trial after a jury convicted him of one count of rape.[1] We reverse for the reasons set forth below.

Viewed in the light most favorable to the verdict, the evidence shows that Mowoe and the victim lived on different floors in the same apartment building. The victim lived on the upper floor with her three-year-old daughter and some friends. Mowoe lived on the floor below with a man named Jersey, who had a daughter the same age as the victim's daughter and whom the victim dated for a brief time after

---

[1] Mowoe was also charged with false imprisonment and burglary, but the jury deadlocked on those charges.

moving to the apartment complex. The victim met both men within a few weeks after she moved into the complex. And on least one occasion, she stayed outside talking with Mowoe, Jersey, and others in the complex parking lot.

On September 12, 2008, Mowoe knocked on the door of the victim's apartment and asked her for help charging his phone. She told him to give her his phone and she would charge it for him, but "he was in the apartment before [she] knew it." Mowoe started grabbing the victim and touching her, but he left when the victim's daughter began to protest his actions.

Later that day, after the victim's daughter left with her grandmother for a visit, the victim was alone in the apartment,[2] and she decided to walk to a nearby restaurant. As she left her apartment, she passed Mowoe sitting on the stairs with another woman. After she passed them, the victim heard someone run up behind her. When she turned around, Mowoe grabbed her around the waist and tried to pick her up and pull her back inside the apartment building. The victim kicked Mowoe in the leg, and when he let her go, she ran to her apartment. She opened the apartment door, but before she could close it, Mowoe was standing in front of her, blocking the door. Mowoe forced his way inside, and the victim ran into her bedroom and locked the

---

[2] Her roommates were also out.

2

door. She heard Mowoe lock the door to her apartment and rummage around the kitchen for a knife, which he used to open the bedroom door. He maneuvered the victim down on the floor, held her hands where she could not move, removed her underwear, and had forcible intercourse with her. During these events, she told him she did not want to have sex and kicked him.

Afterward, the victim found her phone and indicated that she was going to call the police. Mowoe then took away her phone, began to choke her, and slammed her head against the headboard twice. The victim's roommates returned home shortly thereafter, and she fled to the bathroom crying. Mowoe took his phone and left the apartment.

A physical examination of the victim revealed bruises and fresh abrasions on her back and swelling in the area around her vagina, which was consistent with rape. The victim subsequently picked Mowoe out of a photographic lineup as her attacker, and DNA evidence matching Mowoe was found in the victim's vagina.

At trial, Mowoe admitted that he had sex with the victim on September 12, 2008, but he said that she invited him into her apartment and the sex was consensual. Mowoe further testified that after intercourse, his girlfriend, LaToya Wise, called him on his phone; he answered it and lied to his girlfriend, telling her he was hanging out

3

with his male friends. During the call, he told the victim to be quiet and he turned away from her. These events appeared to upset the victim, and she ran to the bathroom crying when her roommates returned. Mowoe then left the apartment. However, the victim denied ever seeing Mowoe on his phone, and testified that the phone was still charging in her living room at the time he raped her. Mowoe also testified that the victim had been dancing on top of a car in the complex parking lot the night before when she fell off the car and "hit the ground, literally," thereby explaining the bruises on the victim's back.

1. Although Mowoe did not raise the issue, we find that the evidence at trial was sufficient to support his rape conviction beyond a reasonable doubt. See *Walters v. State*, 244 Ga. App. 657 (538 SE2d 451) (2000); *Wells v. State*, 208 Ga. App. 298, 299 (1) (430 SE2d 611) (1993); *Clark v. State*, 197 Ga. App. 318, 320 (1) (398 SE2d 377) (1990); *Durden v. State*, 187 Ga. App. 433, 433-434 (1) (370 SE2d 528) (1988).

2. Mowoe asserts that he received ineffective assistance of counsel asserting that his trial counsel was deficient because (1) she failed to object to the State's illegal presentation of misleading evidence during its closing argument; (2) she "did not know how" to impeach the victim with her prior audio statement ; and (3) she failed to secure the attendance of his girlfriend as a witness at trial.

4

In order to prevail on a claim of ineffective assistance of counsel, [Mowoe] must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different.

(Citation omitted.) *Thompson v. State*, 294 Ga. 693, 695 (2) (755 SE2d 713) (2014).

(a) Mowoe asserts that his trial counsel was ineffective in failing to object when, during closing argument, the prosecutor asked Mowoe's girlfriend to stand up and make her presence known even though the girlfriend had not been called to testify at trial. The prosecutor argued:

And this is over a phone call, because he said, ["shhh."] You don't go through all this over, ["shhh."] You go up and tell Ms. LaToya Wise, ["Hey,] Ms. Wise, I banged your boyfriend last night.["] Ms. Wise is right here in this courtroom. Ms. Wise, will you stand up, please?"

At that point, an unidentified person stood up in the gallery, and the prosecutor continued, "Why not bring her to the stand, if I'm not telling the truth? Go up and knock on her door." Mowoe argues this procedure was improper and that his counsel's failure to object "directly and misleadingly undermined [his] credibility, and at the same time wrongly shored up [the victim's] credibility."

5

At the hearing on the motion for new trial, Wise testified that she had met and spoken with the defense attorney some time before the trial to discuss her knowledge of the case. Wise said that the defense had her mother's address and that was the only way they had to reach her. She said that the defense did not contact her again within the month before trial, but they did not have her phone number. However, if they had reached her, she would have been willing to testify. Wise was not in town on the first day of trial. She said that the State got in touch with her two days before trial, and she spoke with them the day before the last day of trial, which was when they subpoenaed her to be there on the last day.[3]

Wise further testified that on the evening before the alleged rape, she saw the victim in the parking lot of the complex with a large group of people while music was playing from the surrounding cars. She said she often saw the victim hanging outside with others in the complex. That night, however, Wise saw the victim and another woman dancing on top of a car. At one point, she saw the victim fall off the car and hit the ground on her back. A friend helped the victim back up. She recalled that the next day a number of emergency vehicles arrived at the complex in front of the building where the victim lived, approximately ten minutes after she had spoken to

---

[3] No evidence was presented as to how the State located Wise.

Mowoe on the telephone. She said that when she spoke with him, she was wondering what was wrong with him; he seemed mad. At first she heard someone in the background, and she thought something was going on between Mowoe and a girl in the background. Mowoe and Wise continued talking, and Mowoe asked to come to her house.

Mowoe's trial counsel also testified at the motion hearing and said that she had spoken to Wise several times before trial, and they had discussed her testimony. The last time she recalled talking with Wise was a few weeks before trial. The attorney stated that she was not sure if she served Wise with a subpoena, but she kept trying to contact her by telephone through Wise's friends and family right up to trial and even while the trial was ongoing.[4] Mowoe's attorney believed that Wise's testimony would have helped his case because Wise would have testified that she witnessed the victim falling off the car and hurting her back and also that she was on the phone with Mowoe when he was in the room with the victim.

Mowoe's attorney further testified that when the prosecutor identified Wise during closing argument and had her stand up, she "was just really surprised she was

---

[4] Counsel did not hire an investigator, because neither Mowoe's family nor she had the funds to do so, nor did she petition the trial court for the funds to do so.

there after we . . . tried to find her. . . . Kind of surprised, taken off guard by it and then everything's that kind of passed, so, no I did not object to it." The trial attorney conceded that Wise's appearance during closing argument was harmful. Because she was being presented by the prosecution, it appeared that her testimony would not have been in Mowoe's favor and that she did not come forward before because she did not want to testify against him.

Mowoe asserts that the prosecutor's demonstration during his closing argument was improper because it was an assertion of facts not evidence, and it is well settled that "[a] prosecutor may not . . . inject into his final argument matters which have not been proven in evidence." (Citation and punctuation omitted.) *Williams v. State*, 254 Ga. 508, 511 (3) (330 SE2d 353) (1985). The State argues, however, that its demonstration did not constitute any additional factual evidence, but merely showed that Wise was present.

The fact that Wise did not testify was of record and was a proper subject for the prosecutor's argument. And "a prosecuting attorney is able to comment on a criminal defendant's failure to produce certain witnesses when the defendant testifies to the existence of a witness with knowledge of material and relevant facts, and that person does not testify at trial." *Morgan v. State*, 267 Ga. 203, 206 (3) (476 SE2d 747)

8

(1996).[5] But the prosecution is not entitled to back up such commentary with evidence not previously introduced at trial. Having Wise stand up during closing argument demonstrated to the jury that she was readily available to testify and could have been called as a witness in the case, facts that were not presented during the evidentiary portion of the trial. *Williams*, 254 Ga. at 511 (3). This tactic, after the close of evidence, gave Mowoe no chance to rebut the prosecutor's demonstration with evidence showing the defense's efforts to contact Wise before and during trial.

The prosecution could easily have used a similar demonstration at trial during the cross-examination of Mowoe, but if the State had done so, Mowoe could have asked for the opportunity to rebut it by putting Wise on the stand. Alternatively, the State could have made the same point in other ways. In fact, the prosecutor asked Mowoe if he knew where to find a number of people, whom he had identified as having knowledge of the events on or about September 12, 2008. And although earlier in the cross-examination, the prosecutor asked Mowoe to identify Wise, by

---

[5] We note, however, that it is well settled that it is improper for the State to argue that the defense had a duty to present evidence, thereby shifting the burden of proof to the defendant. *Jackson v. State*, 279 Ga. 449, 454 (4) (614 SE2d 781) (2005). See also *Morgan v. State*, 255 Ga. App. 58, 61 (3) (a) (564 SE2d 467) (2002).

9

name, as his girlfriend ,[6] he did not ask him if he knew where to find her. Instead, the prosecutor chose to wait until the defense could not counter his presentation of Wise with evidence of its own. Thus, we find that "[t]his demonstration should have taken place during trial or not at all." Id. See also *Sumlin v. State*, 283 Ga. 264, 266 (2) (658 SE2d 596) (2008); *Mathis v. State*, 276 Ga. App. 587, 587, n. 1 (623 SE2d 674) (2005); *Rust v. State*, 264 Ga. App. 893, 899 (3) (592 SE2d 525) (2003). As our Supreme Court has recognized,

> [i]n our criminal justice system, the district attorney represents the people of the state in prosecuting individuals who have been charged with violating our state's criminal laws. The responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict.

(Punctuation and citations omitted.) *State v. Wooten,* 273 Ga. 529, 531 (2) (543 SE2d 721) (2001). See also *Greater Georgia Amusements, LLC v. State*, 317 Ga. App. 118, 121 (2) (728 SE2d 744) (2012); *Thompson v. State*, 163 Ga. App. 35, 36 (4) (292 SE2d 470) (1982). We conclude, therefore, that the State's demonstration during closing argument was improper.

---

[6] Mowoe referred to Wise only as his "girlfriend" or his "girl" during his direct testimony.

The failure of Mowoe's trial counsel to object to this violation of Mowoe's Sixth Amendment right to confrontation prevented the trial court from taking any corrective action and waived the issue for appellate review. *Sumlin*, 283 Ga. at 266-267 (2); OCGA § 17-8-75.[7] Thus, we find that his trial counsel was deficient in failing to object to the prosecution's demonstration and in failing to preserve his appellate rights. This failure did not arise out of a planned trial strategy but rather occurred simply because counsel was shocked at Wise's appearance during closing argument.

And where, as here, the evidence was not overwhelming, but rather required the jury to weigh the credibility of the victim's testimony against Mowoe's testimony

---

[7] That statute provides:

> Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender.

OCGA § 17-8-75.

concerning the events of September 12, we cannot say that the error was harmless. The prosecution's production of Wise at the trial suggested that she was ready, willing and able to testify, but that the defense made the conscious choice not to call her as a witness, thus raising an inference that her testimony would have been unfavorable to the defense. But as Wise's testimony at the hearing on the motion for new trial clearly demonstrated, she could have offered an alternative explanation for the bruises on the victim's back, and she could have confirmed that she spoke with Mowoe on the phone and heard a woman in the background, thereby corroborating his version of events. Accordingly, the inferences that arose from the prosecution's demonstration were impermissibly misleading, and the failure of Mowoe's trial attorney to object allowed the inferences to stand unrebutted during the jury's deliberations. We find, therefore, that a reasonable probability exists that the demonstration affected the jury's consideration of the witnesses' credibility and thus affected the outcome at trial. Because we find that Mowoe has carried his burden of demonstrating ineffective assistance of counsel on this ground, he is entitled to a new trial.

(b) As we have held that Mowoe is entitled to a new trial, we need not reach Mowoe's remaining enumerations asserting ineffective assistance of counsel.

12

3. Similarly, we need not reach Mowoe's other remaining enumerations of error as the issues asserted therein are not likely to arise in any subsequent retrial.

*Judgment reversed. Phipps, C. J., and Ellington, P. J., concur.*