307 Ga. 731
FINAL COPY

S19A1345.  STEPHENS v. THE STATE.
S19A1346. BREWER v. THE STATE.

MELTON, Chief Justice.

Following a joint jury trial, Lloyd Stephens and Demetreus Brewer appeal their respective convictions for the murder of Eric Kemp.[1] Both defendants contend that the trial court committed

---

[1] On December 13, 2011, Stephens, Brewer, and James McDowell were indicted for malice murder, felony murder predicated on aggravated assault, and felony murder predicated on possession of a firearm by a convicted felon. Though the defendants were also indicted for several other non-murder crimes, those crimes were dismissed by the trial court because the statute of limitation had expired. Following a joint jury trial ending on April 5, 2013, all three co-defendants were found guilty of all remaining counts. As a recidivist under OCGA § 17-10-7 (c), Stephens was sentenced to life without parole. Brewer was also sentenced to life without parole. In the cases of both Stephens and Brewer, the trial court purported to merge the counts of felony murder into malice murder; however, the counts of felony murder were actually vacated by operation of law. *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993). Stephens filed a motion for new trial on April 16, 2013, and amended it on March 13 and March 14, 2018. Following a hearing, the trial court denied Stephens's motion on December 4, 2018, but resentenced Stephens to life with the possibility of parole. Brewer filed a motion for new trial on May 2, 2013, and amended it on November 7, 2017. On December 4, 2018, the trial court denied Brewer's motion, but resentenced Brewer to life with the possibility of parole. Both Stephens and Brewer filed timely notices of appeal. Their appeals, consolidated for our review, were submitted on the briefs and docketed to the August 2019 term of this Court.

evidentiary errors, and Stephens also argues that he received ineffective assistance of counsel. For the reasons set forth below, we affirm in both cases.

Viewed in the light most favorable to the verdicts, the evidence presented at trial shows that, on the evening of October 25, 2002, Kemp and two of his cousins, James Fields and Ernest Williams, were playing pool and drinking at an electronics repair shop owned by Kemp. At one point, Fields heard noises at the front door. Fields checked the door, but did not see anyone there. As Fields returned to the back of the shop, Kemp went to check the door himself. Fields then heard the door being kicked in, and he saw a number of men rush inside. In the commotion, Fields and Williams believed police were raiding the shop because Williams had been "cooking drugs" in the back. Fields feared being arrested on drug charges, so he and Williams fled through a back door and ran to their grandmother's house nearby.

A few minutes before this intrusion, several witnesses saw or interacted with a group of men who exited a blue vehicle and walked

down a pathway that led to Kemp's shop. Eyewitness testimony placed Stephens, Brewer, and McDowell in this group of men. Anthony Styles, one of the witnesses, testified that Brewer, whom Styles had known since elementary school, was carrying a handgun, and McDowell was carrying a rifle. Moments after the group of men was seen approaching Kemp's shop, multiple gunshots rang out. Thereafter, some of the men from the car were seen running back toward the same vehicle and putting firearms in the trunk.

When police first responded to the scene of the shooting, they discovered Kemp's body slumped over a pool table. His pockets were turned inside out, he appeared to have been beaten with pool cues, and he had a gunshot wound on the left side of his neck. Ballistics tests indicated that an AK-47 or SKS-type rifle could have caused the wound. Shell casings from a .40-caliber handgun were also found at the scene.

After Kemp's death, Brewer admitted to Gayle Glass that he had been involved in the robbery and the murder of the "beeper man." Brewer made this statement while pointing at Kemp's shop.

Further evidence indicated that Kemp was known as the "beeper man" because he repaired "beepers" at his business. Similarly, Stephens admitted to an acquaintance, Daniel Chatman, that Stephens, McDowell, and Jeremy Horton were involved in Kemp's murder.

Within twenty-four hours of Kemp's death, two men whom police considered to be suspects in the crime, including Horton, were killed. Based on the information available at the time, the case was then closed. It was reopened in 2010, however, when Chatman, then a federal witness in another case, implicated Stephens and McDowell in Kemp's murder. Detectives investigated Chatman's information further and found that Stephens and McDowell had been arrested four days after the murder. At the time of the arrest, Stephens and McDowell were passengers in a stolen vehicle found to contain both a large amount of cocaine and a .40-caliber handgun.[2] Officers found two spent shell casings during a search of the vehicle,

---

[2] James Brown, who was driving the stolen car, testified that both the drugs and the gun belonged to Stephens and McDowell.

one belonging to a .40-caliber handgun and one belonging to an assault rifle, the two types of guns used in the murder of Kemp. Ballistics tests confirmed that the spent .40-caliber shell casing from the murder scene in Kemp's shop was fired from the same weapon recovered from the vehicle in which Stephens and McDowell were sitting at the time of their arrest. Additional investigation eventually led to the arrest of Brewer, based on witness information detailed above.

Neither Stephens nor Brewer raises any challenge to the sufficiency of the evidence. As is our custom in murder cases, we have nonetheless reviewed the record, and we conclude that the evidence in both cases was sufficient to enable the jury to find the defendants guilty beyond a reasonable doubt of the crimes for which they were convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

*Case No. S19A1345*

1. Citing OCGA § 17-8-75,[3] Stephens contends that the trial court committed reversible error when it failed to issue a curative instruction or declare a mistrial after the State, in its closing argument, mentioned two different people who did not testify at Stephens's trial. We disagree in both instances.

(a) Stephens's first contention concerns the State's argument regarding Vanessa Thrasher, a potential witness who could not be located prior to trial. The transcript shows that the State argued the following in its closing:

> PROSECUTOR: Just over there where this happened, every single witness that we talked to, first words out of their mouth: Vanessa Thrasher. I knew the name because we have a reward fund for her that's on a big old board in our office. She was a witness in one of our cases.
> DEFENSE COUNSEL: Objection, your honor. I know the State has a right to argue the case, but they have to argue facts that were put into the case. That name was not mentioned by any witness.
> PROSECUTOR: Your Honor.

---

[3] OCGA § 17-8-75 provides:

Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender.

DEFENSE COUNSEL: That name was not mentioned by any witness. She can only argue facts in evidence.
COURT: Talk about the facts of this case, please.
PROSECUTOR: I sure will, Your Honor. These witnesses know that snitching is dangerous.

Stephens argues that the State mentioned Thrasher in order to create sympathy for the witnesses who actually did show up and testify at trial, despite the potential repercussions of "snitching." He further contends that, after sustaining his objection, the trial court was required, sua sponte, to issue a curative instruction or declare a mistrial pursuant to OCGA § 17-8-75.

"[W]here the objection to the prejudicial matter is sustained, the court has no duty to rebuke counsel or give curative instructions unless specifically requested by the defendant." (Citation and punctuation omitted.) *Fleming v. State*, 306 Ga. 240, 243 (2) (830 SE2d 129) (2019). Moreover, even assuming that the trial court erred by failing to give, sua sponte, a curative instruction, any such error was harmless because it is highly probable that it did not

contribute to the verdict.[4] Throughout the trial, numerous witnesses testified regarding their potential disincentives for coming forward to testify, including specific threats made against them by defendants as well as the general disregard in the community for those who might be labeled as a "snitch." The comment by the prosecutor, at worst, was merely cumulative of testimony from the witnesses, themselves, regarding the threats that they faced by agreeing to testify. See, e.g., *Rutledge v. State*, 298 Ga. 37, 40 (2) (779 SE2d 275) (2015) (no harm from admission of hearsay that was "largely cumulative" of other properly admitted testimony).[5]

(b) Next, Stephens contends that the trial court was required to give curative instructions or declare a mistrial after the

---

[4] A trial court's error in not fulfilling its duty under OCGA § 17-8-75 is subject to harmless error analysis. See *Arrington v. State*, 286 Ga. 335, 345-346 (16) (a) (687 SE2d 438) (2009) (finding harmless error in trial court's failure to rebuke the State in response to prosecutor's misstatement of evidence during closing argument, where improper statement consisted of one sentence, was interrupted by defense counsel's objection, and trial court immediately observed that the "jury w[ould] remember the evidence," and where other inculpatory evidence rendered it highly probable that the error did not contribute to the guilty verdicts).

[5] Furthermore, we note that the trial court properly instructed the jury that "[e]vidence does not include . . . closing remarks of the attorneys, or questions asked by the attorneys."

prosecutor made a statement in closing arguments regarding Brewer's failure to call Brewer's mother, who was in the courtroom, as an impeachment witness. The transcript shows that the prosecutor stated:

> Demetreus Brewer. How do we know that Demetreus Brewer is guilty? Gayle Glass. She smoked with Demetreus's mother and she drank with Demetreus. If she wanted to disparage Demetreus, she could have said, I bought my drugs from Demetreus. She could have said, yes, I smoked with Demetreus. She said, I never smoked with Demetreus, just his mama. And his mama was out here in the courtroom. That you heard testimony of. If she was lying, you ain't heard his mama say it.

Brewer's counsel objected to the comment, but Stephens's counsel did not adopt or ask to join the objection. Under these circumstances, Stephens has not preserved this issue for review, as an objection raised by a co-defendant does not preserve the contested issue for another co-defendant unless that co-defendant expressly adopts or joins in the objection. *Jackson v. State*, 272 Ga. 554, 556 (4) (532 SE2d 674) (2000).[6] Accordingly, Stephens did not preserve

---

[6] We also note that, in Georgia, plain error review is not available for allegedly improper remarks made during closing arguments. See *Gates v. State*, 298 Ga. 324 (4) (781 SE2d 772) (2016).

this particular claim for review.

2. Stephens contends that trial counsel rendered ineffective assistance by failing to object when the prosecutor improperly commented on the veracity of several witnesses during the State's closing arguments. We disagree.

> In order to succeed on his claim of ineffective assistance, [Stephens] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. *Strickland v. Washington*, 466 U. S. 668 (104 SC[t] 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); *Fuller v. State*, 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, "'[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

*Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).

The specific instances complained about by Stephens are as follows:

> PROSECUTOR: Bruce Ector. You know how you know Bruce Ector is credible? Because if he was lying, he could

10

have said, I saw all three of them . . . . But Bruce Ector said, I didn't see Demetreus.

. . .

PROSECUTOR: And why would it hurt his client if a lying bipolar person testified? They want to distract you. But you heard her [Gayle Glass]. She is credible. If you notice, she wasn't going to testify. Because when I first asked her the question, do you remember what happened, she said no. Yes, she's not lying, and her trial testimony is uncontroverted.

. . .

PROSECUTOR: She [Myrtice Cooper] did not [see four guys come from Kemp's shop]. If she wanted to lie back in 2002, she could have said, yeah, I saw them. Her statements would have matched everybody else's lock, stock, and barrel. But they didn't.

. . .

PROSECUTOR: The fact that Daniel Chatman was friends with [Stephens] and [McDowell] is undisputed. He had to be moved to a different location. He told you that. We had to move him from outside of the Fulton County Jail, because in jail they said [Chatman was] snitching. Why would he risk his life for a lie?

Stephens contends that, in each of these instances, the prosecutor was stating her personal belief that Ector, Glass, Cooper, and Chatman were credible. At the hearing regarding Stephens's motion

11

for new trial, Stephens's trial counsel testified that she did not object to these remarks because she "just saw it as [the prosecutor] commenting on the evidence and with respect to the witness[es]' opportunity to know the facts they testified about."

Under these circumstances, Stephens has not shown that trial counsel's performance was deficient. Though a prosecutor may not express his or her personal belief as to whether a witness is credible, the prosecutor is permitted to "argue reasonable inferences from the evidence, including any that address the credibility of witnesses." (Citation omitted.) *Menefee v. State*, 301 Ga. 505, 511 (4) (a) (801 SE2d 782) (2017) (prosecutor's argument that witness was credible was permissible argument based on evidence but not personal belief). The prosecutor's comments were based on inferences from the evidence, not her personal beliefs, and, as such, the comments were proper. Id. at 513-514 (4) (a) (iii). Therefore, Stephens's claim that his trial counsel was ineffective holds no merit.

3. Finally, Stephens argues that the trial court erred by denying his motion for mistrial after the State allegedly introduced

12

facts not in evidence by mentioning potential witnesses during its closing argument who were not called at trial. We disagree, as the text of the transcript indicates that Stephens is mischaracterizing the State's argument.

"[A] prosecutor is granted wide latitude in the conduct of closing argument . . . ; within the scope of such latitude is the prosecutor's ability to argue reasonable inferences from the evidence. . . ." *Scott v. State*, 290 Ga. 883, 885 (2) (725 SE2d 305) (2012). "A closing argument is to be judged in the context in which it is made." *Booth v. State*, 301 Ga. 678, 686 (4) (804 SE2d 104) (2017). And "[w]hether to declare a mistrial is in the discretion of the trial court and will not be disturbed on appeal unless it is apparent that a mistrial is essential to the preservation of the right to a fair trial." *Rafi v. State*, 289 Ga. 716, 720 (4) (715 SE2d 113) (2011) (citations and punctuation omitted).

The transcript shows that the following transpired during the prosecutor's closing argument:

PROSECUTOR: So while [Stephens's counsel] told you

that I kept objecting when she kept trying to ask what [Chatman] heard on the streets, [Stephens's counsel] knows as well as I do, evidence is what you know personally, not rumor and conjecture and scuttlebutt on the streets. That's why I objected. We object when the evidence is not competent to be presented to a jury. So if we brought in everybody who said they saw [McDowell] and [Stephens] or heard something about it, we could be here I don't know how long. And the fact that —

DEFENSE COUNSEL: Your Honor, I'm just going to object to the inference that there were other people out there that the State didn't call forward. That evidence is not before the jury. It's nowhere in discovery that there were other witnesses out there. So I object to the State arguing facts not in evidence.

[PROSECUTOR]: Your Honor, if I may.

COURT: Objection overruled.

This exchange shows that the prosecutor was not attempting to introduce facts not in evidence; instead, she was attempting to explain how "rumor and scuttlebutt" could *not* be introduced into evidence. Her argument, in its proper context, was a response to Stephens's argument about the reason that the State had made objections. The prosecutor was attempting to explain her objection to the admission into evidence of what Chatman heard on the streets from potential witnesses who may have provided only "rumor and scuttlebutt." Under these circumstances, the trial court did not

14

abuse its discretion by denying Stephens's motion for a mistrial.

*Case No. S19A1346*

4. Brewer contends that the trial court erred by denying his motion to stipulate to his prior felony.[7] We disagree.

In the bulk of his argument, Brewer maintains that this Court must now decide his claim based on *Old Chief v. United States*, 519 U. S. 172 (117 SCt 644, 136 LE2d 574) (1997), not on old Evidence Code cases like *Ross v. State*, 279 Ga. 365 (614 SE2d 31) (2005). In *Ross*, we held:

> [W]hen (1) a defendant's prior conviction is of the nature likely to inflame the passions of the jury and raise the risk of a conviction based on improper considerations, and (2) the purpose of the evidence is solely to prove the defendant's status as a convicted felon, then it is an abuse of discretion for the trial court to spurn the defendant's offer to stipulate to his prior conviction and admit the evidence to the jury.

Id. at 368 (2). Brewer argues that the *Ross* stipulation requirement

---

[7] The record shows that, prior to trial, Brewer offered to stipulate to his prior felony conviction, and the trial court denied Brewer's motion, holding that the State was authorized to decide whether a stipulation was sufficient, as the State must determine how to best prosecute its case. A certified copy of Brewer's prior felony conviction for possession of cocaine with intent to distribute was ultimately introduced and presented to the jury.

that a prior conviction be "of the nature likely to inflame the passions of the jury" is not part of the *Old Chief* analysis and should not be applied to him. We, however, have already decided this argument to the contrary. In *Bentley v. State*, 307 Ga. 1, 7 (2) (b) (1) (834 SE2d 549) (2019), after a lengthy discussion, we concluded that "the Supreme Court's interpretation of Rule 403 in *Old Chief* is now the most controlling decision on this issue."[8] Id. In *Old Chief*,

> [t]he Supreme Court held that when the name or nature of the prior offense raises the risk of a verdict tainted by improper considerations, and when the purpose of the evidence is solely to prove the element of prior conviction, a trial court abuses its discretion under Rule 403 by spurning the defendant's offer to stipulate and instead admitting the evidence of the earlier conviction. See *Old Chief*, 519 U. S. at 174, 191-192.

*Bentley*, supra, 307 Ga. at 6-7 (2) (b) (1) Applying the *Old Chief* standard to the facts of this case, the name or nature of Brewer's prior offense, possession of cocaine with intent to distribute, did not raise the risk that his verdict for the murder of Kemp was tainted

---

[8] We also observed that our old Evidence Code cases applying *Ross* are "likely also faithful applications of *Old Chief*." *Bentley*, supra, 307 Ga. at 7 (2) (b) (1).

16

by improper considerations. See, e.g., *Chavez v. State*, 307 Ga. 804 (2) (a) (837 SE2d 766) (2020) ("[P]rior convictions involving firearms and minor drug offenses are not likely to inflame the jury's passions in a murder case."). Therefore, the trial court did not abuse its discretion when it denied Brewer's request to stipulate to his prior felony conviction.

5. Similarly to Stephens, Brewer argues that the trial court erred on two separate occasions by failing either to grant a mistrial or rebuke the prosecution and give curative instructions pursuant to OCGA § 17-8-75 following objections to the State's mentions of allegedly prejudicial matters not in evidence during closing argument.

(a) Brewer first challenges the prosecutor's statement regarding Glass and Brewer's mother recited in Division 1 (b) above. Relying on *Mowoe v. State*, 328 Ga. App. 536 (2) (759 SE2d 663) (2014), Brewer maintains that the prosecutor introduced facts not in evidence and shifted the burden of proof by waiting until closing argument to draw attention to Brewer's mother as an available

witness who was never called to testify by Brewer. *Mowoe*, however, is factually distinguishable from the present matter. In *Mowoe*, the prosecutor did not make the courtroom presence of one of the defendant's potential witnesses known until closing argument, when the defendant could no longer call the witness to counter the prosecutor's arguments. In this case, the prosecutor was not, in fact, introducing new evidence to the jury during her closing argument, as argued by Brewer. And, concomitantly, the trial court did not err when it overruled Brewer's objection to the prosecutor's statement and when it did not issue curative instructions or declare a mistrial, sua sponte, following the objection.

(b) During her direct examination, Glass testified that she had been threatened by Brewer to not testify and that she was "scared" by Brewer's trial counsel. Later, during closing arguments, the State presented a slide that stated, "perhaps Myrtice Cooper has been influenced by the same person who influenced Ms. Glass." Brewer objected at the time, but the prosecutor was allowed to continue after a brief discussion off the record. When the prosecutor finished

her closing, and after the jury had left the courtroom, Brewer renewed the objection on the record and asked for a mistrial because the facts were not in evidence. The trial court granted Brewer's objection and offered curative instructions, but Brewer's trial counsel responded, "Judge, I've asked for a mistrial. You denied that. I do not request curative instructions." Under these circumstances, Brewer did not preserve this issue for our review because his counsel affirmatively informed the court that Brewer did not want a curative instruction to be given. See, e.g., *Brewer v. State*, 301 Ga. 819, 820 (2) (804 SE2d 410) (2017) (defendant waived right to complain that trial court denied his motion for a mistrial after his character allegedly had been placed into evidence because he refused the trial court's offer of curative instructions).

*Judgments affirmed. All the Justices concur.*

DECIDED JANUARY 27, 2020.

Murder. Fulton Superior Court. Before Judge Campbell.

*Stanley W. Schoolcraft III*, for appellant (case no. S19A1345).

*Kevin A. Anderson*, for appellant (case no. S19A1346).

*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Aslean Z. Eaglin, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Mark S. Lindemann, Assistant Attorney General*, for appellee.