**SECOND DIVISION**
**RICKMAN, P. J.,**
**GOBEIL and DAVIS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 25, 2025**

# In the Court of Appeals of Georgia

A25A0099. THE STATE v. SMITH.

GOBEIL, JUDGE.

A jury found Shaniqua Smith guilty of driving under the influence of alcohol ("DUI") to the extent that it was less safe for her to drive ("DUI less safe"). The State appeals from the trial court's order granting Smith's motion for a new trial.[1] We discern no abuse of discretion and affirm the trial court's judgment.

The evidence presented at trial showed that, shortly after midnight on November 1, 2020, law enforcement responded to the scene of multiple automobile collisions on Interstate 95. Smith previously had arrived at the scene after she, her

---

[1] By statute, the State may directly appeal a trial court order granting a motion for a new trial in a criminal case without complying with the interlocutory appeal requirements. See OCGA §§ 5-7-1 (a) (8); 5-7-2 (c); *State v. Cash*, 298 Ga. 90, 91, n. 2 (779 SE2d 603) (2015); *State v. Caffee*, 291 Ga. 31, 33 (2) (728 SE2d 171) (2012).

boyfriend John Guest, and another acquaintance, Danny Brockington, learned that Guest's son had been a passenger in a vehicle involved in one or more of the collisions. When Georgia State Patrol Trooper Adrien Jean encountered Smith, he detected several indications of alcohol impairment. At the trooper's request, Smith performed several field sobriety tests, which indicated that she was impaired. Consequently, he placed Smith under arrest for DUI.

The parties presented conflicting evidence at trial about whether Smith drove to the scene. Trooper Jean testified that, based on statements Smith made to him, he formed the opinion that she had driven to the scene, and she never denied doing so. In that regard, Smith told the trooper that she was at the scene because Guest had sent her a text message about the accident, and she denied being drunk. She also told the trooper, "I wouldn't have drove if I was drunk," and, "Next time, I know not to take my ass to try to help nobody else, right?" In addition, a police officer investigating the collisions testified at trial that, while he could not recall seeing Smith arrive at the scene, he believed Smith had driven there based on the number of persons and vehicles that were on the scene and his belief that two others had arrived in the same vehicle.

2

Nevertheless, there is no indication that Trooper Jean directly asked Smith if she had driven to the scene or that anyone saw her driving that night. But it also does not appear that Smith or Guest — who spoke with her and the trooper after her arrest — ever expressly told the trooper that she did not drive to the scene.

Brockington testified for the defense that he drove his own car to the accident scene, while Smith rode with Guest, who drove a second car, and that all three arrived at the scene before law enforcement.[2] Guest similarly testified that he drove himself and Smith to the accident scene, while Brockington followed in a separate car, and he corroborated Brockington's testimony that no law enforcement was present when the three arrived at the scene. Guest also testified that he did not tell Trooper Jean that Smith had not driven to the scene because, given his "share of run-ins with the police," he "wasn't going to waste [his] time arguing with an officer that already had [Smith] in custody taking her to jail."

At trial, the State also introduced evidence — through another state trooper — that Smith previously pleaded guilty to DUI following a July 2019 arrest. The State

---

[2] When Guest's son was taken to a hospital, Brockington drove Guest to the hospital. Before he left for the hospital, Guest asked Smith to wait for a tow truck to retrieve his son's vehicle. Guest later returned to the scene after Trooper Jean arrested Smith and placed her in his squad car.

then asked that trooper if he knew that Smith also had been convicted of another DUI in 2012. Before the trooper answered, defense counsel objected and asked for a mistrial on the ground that the State had not notified Smith of its intent to introduce evidence of a 2012 incident and that, by asking about it, the State had improperly placed Smith's character at issue. The trial court implicitly sustained the objection by instructing the jury to disregard the question about the 2012 incident but did not explicitly rule on Smith's motion for a mistrial. Notably, during closing argument, the State argued to the jury that Smith's "witnesses are trying to cover up that she was the one that was driving," because "they know that this is *at least* her second DUI." (Emphasis supplied.)

The trial court denied Smith's motion for a directed verdict, and the jury found her guilty of DUI less safe. During her sentencing, the State argued that Smith had two prior DUI convictions — one each in 2012 and 2019 — and, as a result, asked the court to impose a sentence of 180 days in jail and 12 months on probation. While the trial court accepted the State's assertion that this was Smith's third DUI conviction, it imposed a 12-month sentence, with only the first 90 days to be served in jail, and the remainder to be served on probation.

Two days later, Smith filed a motion to vacate her sentence, contending that, in 2012, she had been convicted of only failure to use due care — and not DUI — and that her sentence therefore was based on the incorrect premise that she had two prior DUI convictions.[3] She also filed a motion for a new trial, arguing that the verdict was contrary to the law and evidence, strongly against the weight of the evidence, and based on false information regarding the alleged 2012 DUI conviction. In its opposition to Smith's motion for a new trial, the State conceded that she had only been charged with — but not convicted of — DUI in 2012.[4]

During the hearing on Smith's motion for a new trial, the trial court expressed concern that, despite its curative instruction, the jury had been left with the mistaken impression that Smith had two prior DUI convictions. The court further stated that, because the evidence was "pretty close," and "there was some . . . pretty strong

---

[3] The record on appeal does not appear to contain a ruling on this motion.

[4] It appears from the record that the State first noticed that it was mistaken about the 2012 conviction shortly after Smith's trial, at which point it brought the mistake to defense counsel's attention. Doing so is in keeping with the duty of the State to seek justice and not merely to seek convictions, and the trial court found specifically at the motion for new trial hearing that the State's mistake was not purposeful. See *Mowoe v. State*, 328 Ga. App. 536, 540 (2) (a) (759 SE2d 663) (2014) ("The responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict.").

evidence from the defense," the mistaken impression may have "pushed" the jury "over the top," as a result of which "the best thing to do is to probably try this case again." The court summarily granted Smith's motion for a new trial in a one-sentence order, and this appeal followed.[5]

At the outset, we construe the trial court's order as having granted the motion for new trial under the general grounds. Although Smith argued in her motion that a new trial was warranted because false information was presented to the jury that she was convicted of DUI in 2012 (and that error was the basis for her motion for a mistrial), her motion otherwise tracked the language of OCGA §§ 5-5-20 and 5-5-21.

Under OCGA § 5-5-20, a trial court may grant a new trial "[i]n any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity." And a trial court may grant a new trial under OCGA § 5-5-21 "where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding." A new trial may be granted under either Code section "[e]ven when the evidence is legally sufficient

---

[5] The trial court initially entered the order granting a new trial on September 6, 2023. The State later filed a motion to vacate and reenter the order, on the ground that the court had not notified it of the order's entry. The trial court granted the State's motion, vacated the September 6 order, and reentered the order on January 11, 2024.

to sustain a conviction." *Wilkerson v. State*, 307 Ga. 574, 574-575 (837 SE2d 300) (2019) (citation and punctuation omitted).

> When properly raised in a timely motion, these grounds for a new trial — commonly known as the "general grounds" — require the trial judge to exercise a broad discretion to sit as a "thirteenth juror." In exercising that discretion, the trial judge must consider some of the things that she cannot when assessing the legal sufficiency of the evidence, including any conflicts in the evidence, the credibility of witnesses, and the weight of the evidence.

*Wilkerson*, 307 Ga. at 575 (citation and punctuation omitted). "Although the discretion of a trial judge to award a new trial on the general grounds is not boundless — it is, after all, a discretion that should be exercised with caution and invoked only in exceptional cases in which the evidence preponderates heavily against the verdict — it nevertheless is, generally speaking, a substantial discretion." *State v. Hamilton*, 299 Ga. 667, 670 (2) (791 SE2d 51) (2016) (citation and punctuation omitted). Thus, "[a]n appellate court will not disturb the first grant of a new trial based on the general grounds unless the trial court abused its discretion in granting it and the law and the facts demand the verdict rendered." *State v. Byrd*, 341 Ga. App. 421, 424 (2) (801 SE2d 99) (2017) (citation and punctuation omitted); see OCGA § 5-5-50. In making

that determination, we must keep in mind that the trial court observed the trial and therefore "had the duty to examine the conflicts in the evidence and the credibility of the witnesses in ruling on the general grounds." *Byrd*, 341 Ga. App. at 425 (2) (citation and punctuation omitted).

The State argues that the trial court erred in granting a new trial because (A) Smith was not entitled to a mistrial for the error concerning her prior convictions; and (B) Smith was not entitled to a verdict of acquittal because the evidence presented at trial was sufficient to support the conviction. We discern no abuse of discretion here.

This is a case where the trial court found that information that turned out to be false was, albeit mistakenly, presented to the jury. That fact, combined with the conflicts in the evidence as to whether Smith drove to the scene of the accident, provided sufficient basis for the trial court to conclude that the jury's verdict was both "contrary to evidence and the principles of justice and equity" and/or "decidedly and strongly against the weight of the evidence." OCGA §§ 5-5-20; 5-5-21. See *Byrd*, 341 Ga. App. at 425 (2) (finding no abuse of discretion in grant of new trial under the general grounds where the case "rested entirely upon the credibility of [the defendant, victim], and witnesses," and it was the trial judge "who observed the trial and who

had the duty to examine the conflicts in the evidence and the credibility of the witnesses") (citation and punctuation omitted); accord *State v. Harris*, 292 Ga. 92, 94 (734 SE2d 357) (2012) (the judge who presided over a trial "is given a significant amount of deference to exercise its sound discretion" in ruling on a motion for a new trial under the general grounds "because it was an observer of what transpired at trial"). For the above reasons, and because we conclude that the law and facts did not demand a guilty verdict in this case, we affirm the trial court's order granting Smith a new trial. See OCGA § 5-5-50; *Byrd*, 341 Ga. App. at 424 (2).

*Judgment affirmed. Rickman, P. J., and Davis, J., concur.*